OPINION
By LIEGHLEY, PJ.
On February 16, 1942, the Prosecuting Attorney of Cuyahoga County, Ohio, filed a “Bill of Information” against the defendant Rose Klozar for an alleged violation of §13066 GC, to-wit, “did unlawfully keep and exhibit for gain, certain gambling devices commonly known as slot machines” in a building located at 2605 Harvard Avenue, Newburgh Heights, Ohio. On the same day, the Prosecuting Attorney filed an identical “Bill of Information” against the defendant, Helen Kozek, charging a violation of the same section of the statutes in the same respect at 2507 Harvard Avenue, Newburgh Heights, Ohio.
Proceedings thereafter, in both' cases, and the facts and records in respect thereto, are substantially identical.
On February 16, 1942, the defendants plead guilty to the offenses as charged, and sentence was duly imposed upon each. As a part of the same judgment imposing sentence, the court .ordered that the slot machines seized by the officers in each case be destroyed.
On the 18th day of February, 1942, as shown by the transcript before us each defendant filed a motion for refund of the money contained in the slot machines seized, and on February 27, 1942, the motion -for refund of money seized was overruled.
On February 28th each defendant filed a motion for rehearing of the application for return of the money seized and for a new trial. On March 24th, the motion for rehearing and new trial in each case was overruled and on the same day notice of appeal was filed.
It should be noted that no motion for a new trial was filed to the judgment of February 16, 1942 imposing sentence and ordering destruction of the slot machines. The only motion for a new trial, as exhibited by the transcript, that was filed related to the overruling of the motions for refund in each case.
*295 The defendants claim that the court committed reversible error in denying their motions for a refund of the monies seized, which monies were within the slot machines seized and deposited therein in the process of operation thereof. It is claimed that these monies are in no sense a part of the gambling machines and therefore the defendants are entitled to a return of same.
The defendants seem to base .their claim principally upon the Provisions of §13430-8 GC, and the /provisions of §13430-9 GC. These two sections read as follows:
“Sec. 13430-8: Disposition of same (property or money) after trial. If the accused is discharged by the judge or magistrate the property or other things seized shall be returned to the person in whose possession they were found, unless the possession of such articles is in itself an offense, in which case they shall be destroyed-If he is convicted, the property shall be returned to its owner, and the other things destroyed under the direction of the Court.”
“Sec. 13430-9: Property seized liable for fines, when:
Upon conviction of a person for keeping a room or place to be used or kept for gambling, or knowingly permitting gambling to be conducted therein, or permitting a game to be played for gain, or a gaming device for gain, money or other property or for betting, or gambling, or permitting such device to be so used, or for being without a fixed residence and in the habit of gambling, if money or other property won in gaming be found in his possession, such money or other property shall be subject to seizure and payment of a judgment which may be rendered against him, growing out of such violation of law.”
The defendants also seem to place great reliance upon the case of State v Jacobs, 137 Oh St 363. In this case the sheriff raided a gambling place and in addition to seizing racing forms, blanks, wall boards and other paraphernalia within the place designed and maintained for gambling purposes, the sheriff also seized a cloth bag which was resting on the counter containing over $100.00, and also took almost $400.00 from the person of the defendant arrested when they arrived at the jail.
These facts seem to be entirely different from the facts in the instant cases in which the monies seized were within the gambling devices taken away by the officers.
If the officers in the instant cases, when they raided the places of these defendants, had taken from the counter a sum of money and from the person of each defendant the cash then in the possession of each, and these defendants had moved for a return of these sums, the case of State v Jacobs, supra, would have greater application. Likewise, it might be. said that the two sections of the General Code above cited and copied might be controlling and applicable. The facts of the cases at bar are wholly different.
Another illustration might be pertinent somewhat different from the facts in the case above cited.. Suppose a proprietor of a large gambling house for the convenience of himself and his customers kept, stacks of money on the gambling table for the purpose of making change for the players engaged in. the use of the particular gambling device for gambling purposes. Should the sheriff or officer seize-this cash with the tables, machines etc., so located for such purposes, when making a raid on the place, it might well be claimed that the above sections of the statute would *296 control the disposition of such money. However, the money on the table for the convenience of the proprietor and the players is not necessarily essential to the mechanical operation of any such gambling device. It is not so used nor is there an equivalent substitute therefor. But these facts are clearly distinguishable from the facts in the instant cases.
There is a meager description of a slot machine in the Bill of Exceptions. Also, the method and manner of operation thereof is explained in some detail. Referring to the nickel slot machine, it is necessary to insert a nickel to release a lever, which is pulled down to set in motion three or four circular discs upon the rim of each of which are printed or painted like designs or figures. These then revolve a few times at uneven speed and after a few revolutions come to rest with different combination^ exposed upon each operation. During this operation the unwary player watches feverishly hoping for a winning combination. If one appears, the machine discharges nickels into a cup or pocket for the player. If none appears, the machine stores the nickels. It is a commonly known fact that the machine strongly favors keeping the nickels.
Of course, it is obvious that any metallic piece of the approximate size, weight and shape of a nickel will release the lever, if inserted, and permit the mechanical operation of the machine. A copper token, a disc, or slug will serve the purpose of a nickel. The defendants elected to use or permit the use of nickels.
Now, the defendants claim that the nickels grabbed by the machines are no part of the gambling machines and are not an integral part of the machine and not indispensibly essential to its mechanical operation, although nickels were used in the gambling operation and not tokens.
When the officers destroyed the machines as ordered, would defendants be entitled to the scrap metal or the money realized from the sale thereof? If the machines contained five pounds of copper tokens would the defendants be entitled to the return thereof or the proceeds of sale? It is certain they would be entitled to neither. All rights or claims either had thereto were forfeited by illegal use for illegal purposes.
Having elected to use the legal coins of the United States for the same illegal purposes in the same illegal way, they have no rights thereto and forfeited all claims or interests therein. The moneys herein involved obtained from these slot machines should be handled and disposed of in the same manner as the proceeds derived from the disposition of the destroyed slot machines and as an integral part thereof.
Judgments affirmed.
MORGAN, J. & SKEEL, J., concur.